IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ALLEN RAY KING,
  Plaintiff,

vs.           Case No.: 5:09cv365/MCR/EMT

MARK HENRY, et al.,
  Defendants.
_____/

## ORDER

  This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 13). Leave to proceed in forma pauperis has been granted.

  Upon review of the amended complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or both of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in a second amended complaint.

  Plaintiff names two Defendants in this action, Mark Henry, Warden of Graceville Correctional Facility (GCF), a correctional institution operated by GEO Group, Inc., and Colonel Stewart, a supervisory official at GCF (Doc. 13 at 1–2). Plaintiff claims that Warden Henry and Colonel Stewart subjected him to unhealthy conditions of confinement by exposing him to Environmental Tobacco Smoke (ETS) in violation of the Eighth Amendment.

  Plaintiff alleges the following facts in support of his claim. On August 18, 2008, he reported to the medical department that he was experiencing symptoms similar to a heart attack (Doc. 13 at 5). Upon examination by medical staff at GCF and a local hospital, he was diagnosed with lung irritation, stress, fatigue, and sleep deprivation (*id.*). Nurse Practitioner Alexander, a nurse practitioner at GCF, prescribed medication, a stress-free environment, additional sleep, and that Plaintiff be housed in the non-smoking dormitory at GCF (*id.*). Plaintiff alleges "GCF

administration" does not enforce the smoking policy as to inmates or staff (*id.* at 6). He states inmates do not receive outside smoking breaks and are housed indoors approximately twenty-one (21) hours per day (*id.*). He acknowledges that "No Smoking" signs were posted in some areas after many inmates complained about smoking by the staff, but staff continued to smoke in posted areas (*id.*). Plaintiff states he recorded instances of twelve different staff members who violated the smoking policy over a six-week period (*id.*).

Plaintiff states that on September 22 and 25, 2008, after "heavy exposure" to ETS, his symptoms returned, and on both occasions he was seen by members of the medical staff (*id.*). On October 28, 2008, he was again examined by Nurse Practitioner Alexander, who noted that Plaintiff had lost twelve pounds, so she prescribed additional medications and ordered tests (*id.*). On November 17, 2008, Nurse Practitioner Alexander advised Plaintiff that he had symptoms comparable to asthma or early emphysema (*id.*). Plaintiff states that on February 23, 2009, he still suffered from the same symptoms, so Nurse Practitioner Alexander arranged for twenty-one (21) smoking inmates, who were being housed in Plaintiff's non-smoking dormitory, to be moved (*id.*).

Plaintiff states he filed grievances with Colonel Stewart and Warden Henry regarding violations of the smoking policy, but they failed to enforce the policy (*id.* at 7–7A). He contends their failure constitutes a violation of the Eighth Amendment (*id.* at 7). As relief, he seeks compensatory and punitive damages for past and future mental and physical suffering (*id.*).

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). In order to establish a violation of the Eighth Amendment due to exposure to ETS, a prisoner must show that the defendants have, "with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Id.*, 509 U.S. at 35. In order to show that the risk was unreasonable, a prisoner must establish that he is being exposed to unreasonably high levels of ETS, and that the risk to his health is so grave as to violate contemporary standards of decency. *Id.* at 35–36. To establish deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "The adoption of a smoking policy will bear heavily on the inquiry into deliberate

indifference." <u>Kelley v. Hicks</u>, 400 F.3d 1282, 1284 (11th Cir. 2005) (quotation and citation omitted).

However, supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" <u>Gray ex rel. Alexander v. Bostic</u>, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. <u>Wayne</u>, 197 F.3d at 1106; <u>Weaver v. Toombs</u>, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." <u>Tittle v. Jefferson County Com'n</u>, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* <u>Harris v. City of Marion</u>, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The

standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff claims that Warden Henry and Colonel Stewart were informed, by virtue of grievances he filed with them, of numerous violations of the smoking policy and their effect on his present and future medical conditions (Doc. 13 at 7, 7A). He additionally asserts that Warden Henry and Colonel Stewart willfully and knowingly continued to allow violations of the smoking policy (id. at 7A). However, upon review of the grievances submitted by Plaintiff in support of his claims, it appears that in the particular grievances in which Plaintiff complained to Colonel Stewart and Warden Henry about violations of the smoking policy, he did not notify them that the medical staff had recommended a smoke-free environment, nor did he otherwise advise them that a smoke-free environment was medically necessary (see Doc. 1, attachments at 1–5).[1] Additionally, the responses to those grievances show that Warden Henry and Colonel Stewart's staff investigated Plaintiff's grievances and responded accordingly.[2] Thus the evidence submitted by Plaintiff himself undermines his allegations of deliberate indifference and shows, at best, mere negligence in the lack of enforcement of the smoking policy. See Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) (prisoner failed to establish that warden and assistant warden were deliberately indifferent to his future health in violation of the Eighth Amendment by allowing him to be exposed to harmful levels of ETS while he was incarcerated; facility had a no-smoking policy in place, and any inmate caught smoking inside would be disciplined; prisoner offered only his personal observations of smoke inside prison which, at most, established that warden and assistant warden were negligent in enforcing non-smoking policy); Brown v. Head, 190 Fed. Appx. 808, 810

---

[1] In grievances dated September 22 and 27, 2008, to which Colonel Stewart responded, Plaintiff relayed the medical episode he experienced on August 18, 2008, including his symptoms of shortness of breath, loss of energy, chest pain, high blood pressure, and irregular heart beat, and he stated that he suffered from irritated lungs with fluid build up, and a stress-related sleeping disorder. However, with regard to recommendations from his medical provider, he stated only that his doctor had prescribed medication to help him sleep (Doc. 1, attachments at 1–3). In Plaintiff's appeal to Warden Henry on October 9, 2008, Plaintiff did not mention his medical condition at all (id. at 4–5).

[2] Defendants' responses to Plaintiff's grievances suggest that they took steps to enforce the policy by posting additional signs, reinforcing with staff that they were to smoke only in designated areas, issuing disciplinary reports to inmates who violated the policy, and encouraging Plaintiff to report violations (see Doc. 1, attachments at 1–5)

(11th Cir. 2006) (unpublished) (inmate failed to show that prison administrator violated Eighth Amendment by denying his request to be placed in space free of ETS where record showed that administrator's staff investigated inmate's grievance and responded accordingly; lack of enforcement of existing smoking policy at best showed mere negligence). Therefore, the facts alleged in the amended complaint fail to state a basis for liability as to Warden Henry or Colonel Stewart.

Plaintiff should carefully review the foregoing to determine whether he can state a viable claim for relief. If Plaintiff determines he does not wish to proceed with this action, he shall file a notice of voluntary dismissal. If Plaintiff wishes to proceed with this action, Plaintiff must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." He should name as Defendants only those persons who are responsible for the alleged constitutional violation asserted in the complaint. Plaintiff must place Defendants' names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1. Plaintiff is additionally advised that the complaint may not exceed twenty-five (25) pages absent leave of court upon a showing of good cause. N.D. Fla. Loc. R. 5.1(J)(3).

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so. Finally, Plaintiff is advised that

discovery is premature at this stage of the case, and Plaintiff should not do any discovery without leave of court.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended complaint as instructed, which shall be typed or clearly written, submitted on court form, and marked "Second Amended Complaint." Alternatively, Plaintiff shall file a notice of voluntary dismissal.

3.      Plaintiff's failure to comply with this order as instructed will result in a recommendation of dismissal of this action.

At Pensacola, Florida this 20ᵗʰ day of April 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**