IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ALLEN RAY KING,
      Plaintiff,

vs.                            Case No.: 5:09cv365/MCR/EMT

MARK HENRY, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 24). Leave to proceed in forma pauperis has been granted.

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of

Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the Second Amended Complaint, the court concludes that dismissal of two of Plaintiff's three claims against Defendants is warranted.

I.      RELEVANT ALLEGATIONS

At all times relevant to this action, Plaintiff was an inmate of Graceville Correctional Facility ("GCF"), a state correctional facility operated by The GEO Group, Inc. (*see* Doc. 24). Plaintiff names three Defendants in this action: Mr. George Zoley, Chief Executive Officer of The GEO Group, Inc.; Mark Henry, Warden at GCF; and Tony Stewart, Chief of Security at GCF (*id.* at 1, 2).[2] Plaintiff claims that Defendants violated his Eighth Amendment rights by exposing him to

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

environmental tobacco smoke ("ETS"), exposing him to cold temperatures in his cell, and removing him from the vegan diet program (*id.* at 6–24).[3]

With regard to Defendants' removing Plaintiff from the vegan diet program, Plaintiff states that on March 29, 2009, he filed a grievance with Defendant Stewart, Chief of Security, complaining that he had been ordered to choose between remaining in the non-smoking quad and giving up his vegan diet (Doc. 24 at 7). Plaintiff alleges he told Stewart in the grievance that "medical" recommended that he stay on his vegan diet "for medical issues" (*id.*). Plaintiff alleges Defendant Stewart "pass[ed] the buck," stating that Warden Henry issued the order, so Plaintiff should address the matter with him (*id.* at 8).

Plaintiff alleges that on March 29, 2009, he also filed a grievance with Mr. Stanley, who is not a Defendant, informing him that Nurse Alexander had recommended that he stay in a non-smoking quad and stay on a vegan diet "for medical reasons" (Doc. 24 at 9). Plaintiff states that Mr. Stanley spoke with Nurse Alexander and informed Assistant Warden Bard (also not a Defendant) "of the medical needs and recommendation," and Bard approved Plaintiff's participation in the vegan diet program and his assignment to the non-smoking quad (*id.*). On April 3, 2009, Plaintiff filed another grievance with Mr. Stanley, complaining that he was not receiving his vegan diet tray (*id.* at , Ex. J). Mr. Stanley responded that Assistant Warden Bard had approved the diet tray, and he (Stanley) would provide a written copy of the approval to the officer in charge of Plaintiff's quad (*id.*, Ex. J).

On April 8, 2009, Plaintiff filed a grievance with Defendant Warden Henry complaining that the kitchen was still not sending him his diet (Doc. 24 at 10, Ex. K). On April 16, 2009, he filed another grievance with Warden Henry complaining that he was not receiving his vegan meals (*see* Doc. 1-2 at 31). He informed Warden Henry that Ms. Alexander had told him that the vegan diet would lower his cholesterol level and help him avoid future medications (*id.*). Warden Henry returned the grievance without action for procedural reasons (*id.* at 32). On April 26, 2009, Plaintiff filed yet another grievance with Warden Henry complaining about his failure to receive vegan meals

---

[3] The undersigned includes allegations relating only to the issues of Plaintiff's removal from the vegan diet program and exposure to cold temperatures in his cell, since those are the two claims for which dismissal is recommended.

(*id.* at 34).  He informed Henry that Ms. Alexander had recommended that the vegan diet would "help me avoid future medications" (*id.*).   On June 12, 2009, Warden Henry responded that according to institutional records, Plaintiff's tray was being sent to his quad until April 17, 2009, when he was removed from the vegan diet program for failing to sign for his trays (*id.* at 35). Plaintiff alleges Warden Henry was made aware of Nurse Alexander's "recommendations for Plaintiff's medical needs" on February 23, 2009, when she informed Warden Henry that Plaintiff should avoid ETS, and she gave Warden Henry a list of inmates (supplied by Plaintiff) who were smoking in the non-smoking quad (Doc. 24 at 6, 10, 22).[4]

With regard to the cold temperatures in Plaintiff's quad, Plaintiff states he experienced cold temperatures for forty-eight (48) days during a three-month period (October 27, 2008 to January 22, 2009), with the longest consecutive period being eleven (11) days (Doc. 24, Ex. Z).  He states he first notified Defendant Stewart of the issue in a grievance filed on November 10, 2008 (Doc. 24 at 7, Ex. W).  In that grievance, he told Stewart that the temperatures from October 27– 29, 2008, ranged from 30° to upper 50°'s; from October 30 to November 1, they ranged from upper 40°'s to lower 60°'s; and from November 8–10, 2008, they ranged from lower 40°'s to 60° (*id.*).  He complained that the cold temperatures were causing him sleep loss, chills, shaking, severe discomfort, and severe pain in his neck and shoulder (*id.*).  He stated it was too cold to watch television, play games, read, or write (*id.*).  He admitted that inmates had been issued one blanket and a winter coat but complained that extra blankets and coats were not issued; and it was unreasonable to have to wear a coat inside the housing unit (*id.*).  Plaintiff states Stewart failed to respond to his grievance (Doc. 24 at 7, 19, Exs. X, W, Y).

Plaintiff filed a grievance with Warden Henry on December 21, 2008, complaining about the lack of heat and Defendant Stewart's failure to respond to his grievances (Doc. 24 at 9, Ex. B). Plaintiff acknowledged that on November 13, 2008, two maintenance men came to his quad with the November 10 grievance to Stewart in hand and discussed the issue with him; but the problem continued (*id.*).  Warden Henry responded that the maintenance staff was contacted; and they

---

[4] Those inmates were subsequently removed from the quad.

reported that inspection of the heating unit showed that heating of Plaintiff's housing unit was within the range of 68–72° (*id.*).

Plaintiff alleges Defendant Zoley implemented a practice of using only one of two air handling units in each quad, which caused cold temperatures, as a cost saving measure (*see* Doc. 24 at 9, 11, 13, 14).

As relief, Plaintiff seeks compensatory and punitive damages "in the amount commensurate with past and future consequential treatment of sustained injuries, emotional trauma, and physical suffering comparative to similar instances within this region/Circuit" (Doc. 24 at 12).

II.     ANALYSIS

The court will first address Plaintiff's contention that Defendants deprived him of adequate medical treatment by removing him from the vegan diet program.  It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff claims that Warden Henry's removing him from the program in March of 2009 constituted a deprivation of adequate medical treatment. He states Defendant Stewart and Warden Henry knew that a vegan diet was "medically recommended" by virtue of Plaintiff's advising them of such in grievances. Upon review of those grievances, it is clear that Plaintiff notified Defendant Stewart in a grievance filed March 29, 2009, that "medical [ ]

recommended that my [vegan] diet will improve my other medical needs" (*see* Doc. 24 at 7, Ex. D); and he advised Warden Henry in subsequent grievances that Nurse Alexander "recommended" that a vegan diet would lower his cholesterol and would "help me avoid future medications" (*see* Doc. 24 at 7, Exs. K, U; *see also* Doc. 1-2 at 31).   However, these facts were insufficient to place Defendant Stewart or Warden Henry on notice that Plaintiff had an objectively serious medical need for a vegan diet.  Furthermore, although Plaintiff vaguely asserts that on February 23, 2009*,* Nurse Alexander made Warden Henry aware of Plaintiff's "medical needs" and "recommendations" (*see* Doc. 24 at 10, 13, 22–23), the more specific allegations of the complaint suggest that she discussed only the ETS issue with Warden Henry on that date (*see id.* at 10, 22).  Additionally, Plaintiff's diet was not an issue on February 23, 2009, because he admits he was not removed from the vegan diet program until one month later, on March 26, 2009.  Moreover, in none of the grievances Plaintiff filed with Defendant Stewart or Warden Henry did he state he was suffering any deterioration in his health due to his removal from the vegan diet program (*see* Doc. 24, Exs. D, K, U; Doc. 1-2 at 31). Therefore, the facts fail to show that Warden Henry or Defendant Stewart was subjectively aware that Plaintiff's removal from the vegan diet program posed a substantial risk of serious harm to his health.  As to Defendant Zoley, Plaintiff does not allege any facts suggesting he had any knowledge of or participation in Plaintiff's removal from the vegan program.  Accordingly, Plaintiff has failed to state an Eighth Amendment claim against any Defendant regarding the vegan diet issue.  *See* Taylor v. Adams, 221 F.3d 1254, 1257–58 (11th Cir. 2000) (to state Eighth Amendment claim of denial of adequate medical care, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities'"; and defendants must possess subjective intent to use medical deprivation as means of punishment) (citations omitted).

Additionally, Plaintiff has failed to show a constitutional deprivation with regard to the cold temperatures in his cell.  At a minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571–72 (11th Cir. 1985).  Furthermore,

"conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.

Chandler, 379 F.3d at 1289–90. The objective prong is concerned with both the "severity" and the "duration" of the prisoner's exposure to the alleged unconstitutional condition. *Id.* at 1295. "[M]ere discomfort, without more, does not offend the Eighth Amendment." *Id.*

The second part of the two-part analysis is the "subjective component:"

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

of and disregards an excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at
1979. Furthermore, the official may escape liability for known risks "if [he]
responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*
at 844, 114 S. Ct. at 1982-83.

Chandler, 379 F.3d at 1289–90.

However, supervisory officials are not liable under section 1983 for the unconstitutional acts

of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne,

326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory

liability may occur either when the supervisor personally participates in the alleged unconstitutional

conduct or when there is a causal connection between the actions of a supervising official and the

alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when

a history of widespread abuse puts the responsible supervisor on notice of the need to correct the

alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in

deliberate indifference to constitutional rights' or when facts support 'an inference that the

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act

unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations

omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146

L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the

deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel.

Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d

1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not

alone make the supervisor liable for the allegedly violative conduct brought to light by the

grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F.

Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v.

Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so

pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving

inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th

Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff's allegations fail to satisfy the objective component of the Eighth Amendment standard. His 48-day exposure (spread over a three-month period) to the temperatures he describes with access to a winter coat did not pose a risk of damage to his health "so grave that is violates contemporary standards of decency to expose anyone unwillingly to such risk." Furthermore, Defendant Stewart's response in sending the maintenance crew to investigate Plaintiff's complaint, and Warden Henry's reliance upon the report of the maintenance staff, were reasonable responses and, therefore, do not suggest deliberate indifference. Moreover, Plaintiff alleges no facts suggesting Defendant Zoley knew that the use of only one air handler in each quad posed a substantial risk of serious harm to inmates' health. Therefore, the facts fail to state a plausible claim of deliberate indifference. *See* Helling, 509 U.S. at 36; *see also* Mays v. Springbor, 575 F.3d 643, 648–49 (7th Cir. 2009) (prisoner's allegations of exposure to cold did not rise to level of objectively serious harm necessary to show Eighth Amendment violation where prisoner alleged he caught colds, suffered hurt ears and numb hands, and felt frostbite, but failed to show he was exposed to cold for long periods of time or that he suffered anything more than usual discomforts of winter); *see also, e.g.*, Hernandez v. Fla. Dep't of Corr., 281 Fed. Appx. 862, 866, 2008 WL 2345124, at **3 (11th Cir. 2008) (inmate failed to state Eighth Amendment claim regarding his exposure to cold cell for two-month period in the winter in northern Florida where inmate admitted that cell was heated for several early-morning hours each day and he wore uniform; these circumstances did not demonstrate unreasonable risk of serious damage to inmate's health).[5] *Cf.*

---

[5] The undersigned cites Hernandez only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

Case No. 5:09cv365/MCR/EMT

Gillis v. Litscher, 468 F.3d 488, 490 (7th Cir. 2006) (prisoner stated Eighth Amendment claim where he alleged he was forced to sleep naked in cold cell had to walk around fourteen hours a day to keep warm); Spencer v. Bouchard, 449 F.3d 721, 728–29 (6th Cir. 2006) (alleged conditions of confinement for pretrial detainee at county jail, including subjection to cold cell continuously for several months, especially when coupled with leaking ceiling in cell, constituted sufficiently serious deprivation to support detainee's § 1983 Fourteenth Amendment inadequate-shelter claim against county officials, even though there was some question as to how cold cell was); Dixon v. Godinez, 114 F.3d 640, 642–44 (7th Cir. 1997) (prisoner stated Eighth Amendment claim where he alleged he could not keep warm in cell with average temperature of forty degrees and inadequate clothing or bedding); Henderson v. DeRobertis, 940 F.2d 1055, 1060 (7th Cir. 1991) (reasonable jurors could have found that defendants' conduct in leaving inmates exposed to temperatures below freezing for four days (when outside temperatures dropped to twenty-two degrees below zero and broken windows in cell block permitted frigid outside air to flow in, ice formed in cells, and "it was cold enough to see your breath") without affording any protection beyond that usually provided when heating system functioned properly (meaning, no winter coats and no additional blankets or shirts) constituted deliberate indifference to Eighth Amendment rights).  Therefore, this claim should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants regarding his removal from the vegan diet program and exposure to cold temperatures in his cell be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

2. That this matter be referred to the undersigned for further proceedings on Plaintiff's remaining claim regarding ETS.

At Pensacola, Florida, this 24th day of September 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).