IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALLEN RAY KING,
       Plaintiff,

vs.                                                      Case No.: 5:09cv365/MCR/EMT

MARK HENRY, et al.,
       Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff subsequently filed a Second Amended Complaint (Doc. 24), which is the operative pleading.  Plaintiff names three Defendants:  Mark Henry, Warden of Graceville Correctional Facility ("GCF"); Tony Stewart, Chief of Security at GCF; and George Zoley, CEO of The GEO Group, Inc., a private corporation that managed GCF at the time of the events giving rise to this action (*id.*).  Plaintiff alleges Defendants violated his Eighth Amendment rights by exposing him to environmental tobacco smoke ("ETS") (*id.*).[1]  As relief, he seeks compensatory and punitive damages (*id.*).

      On February 21, 2011, Defendants filed a Motion to Dismiss with Prejudice, or in the Alternative, Motion for Summary Judgment with Accompanying Memorandum of Law (Doc. 42).  Defendants filed supporting materials with their motion (*see* Doc. 42, Exs. A–D).  In their motion, Defendants contend Plaintiff failed to exhaust his administrative remedies (*id.*).  Defendant Zoley additionally contends Plaintiff's allegations fail to state a claim for relief against him (*id.*).  On

---

[1] Plaintiff also claimed that Defendants violated the Eighth Amendment by exposing him to cold temperatures in his cell and removing him from the vegan diet program (*see* Doc. 24).  On February 9, 2007, the court dismissed the claims concerning exposure to cold temperatures and removal from the vegan diet program, thus leaving Plaintiff's ETS claim as the only surviving claim (*see* Docs. 26, 29).

February 28, 2011, the court advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Plaintiff to respond to the motion (Doc. 44). Plaintiff filed a response with supporting materials (Doc. 47).

Upon review of the record, it is the opinion of the undersigned that Defendants' motion to dismiss or for summary judgment should be denied as to Defendants Henry and Stewart and granted as to Defendant Zoley.

I.      MATERIAL FACTS

As this case comes before the court on Defendants' motion to dismiss or for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file.  Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts.  *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).  Additionally, the court conveys only those facts that are material to the exhaustion issue and the issue of Defendant Zoley's liability, since those are the only issues raised in Defendants' motion.

At all times relevant to this action, Plaintiff was an inmate of GCF (*see* Doc. 24).  On April 11, 2008, prior to Plaintiff's arrival at GCF, an associate warden issued a memorandum to inmates announcing that one "quad" in each housing unit would be designated a "non-smoking quad," meaning that inmates living in the quad would not have the ability to purchase tobacco products (Doc. 24 at 8, Ex. F; Doc. 47 at 28–30, Murray Aff., Weinberg Aff., Mathews Aff.).[2]  The announcement stated that the intent of this administrative action was to create a "true, smoke-free environment" in each housing unit (Doc. 24 at 8).  On July 2, 2008, GCF administration posted another memorandum to inmates updating the rules for non-smoking quads (*see* Doc. 24 at 8; Doc. 47 at 28–30, Murray Aff., Weinberg Aff., Mathews Aff.).  The memorandum stated that by July 7, 2008, inmates returning to non-smoking quads from the recreation yard would be searched to ensure

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

that no contraband or cigarette lighters were present (*id.*).  The memorandum further stated that if staff smelled smoke or otherwise determined that smoking was occurring, the officer in charge would be contacted and a fire and safety inspection would be conducted to ensure that no lighted smoking materials were present (*id.*).  Plaintiff was assigned to a non-smoking quad (*see* Doc. 24, Ex. A).

On September 21, 2008, Plaintiff filed a grievance with Ms. Durrance, the Grievance Coordinator at GCF, stating that several unidentified inmates and institutional staff members were violating Florida Statutes Section 944.115 (a statute prohibiting smoking inside state correctional facilities, including privately operated correctional institutions),[3] and Rule 33-401.401 of the Florida Administrative Code (the administrative policy of the Florida Department of Corrections ("FDOC")

---

[3] Section 944.115 provides, in relevant part:

(3)(a)  An inmate within a state correctional facility [meaning a state or privately operated correctional institution] may not use tobacco products in prohibited areas [meaning any indoor areas of any building, portable, or other enclosed structure] within a state correctional facility at any time while in the custody of the department or under the supervision of a private vendor operating a correctional facility.

(b)  1.  An employee or visitor may not use any tobacco products in prohibited areas.

2.  The warden or supervisor of a state correctional facility shall take reasonable steps to ensure that the tobacco prohibition for employees and visitors is strictly enforced.

(4) An inmate who violates this section commits a disciplinary infraction and is subject to punishment determined to be appropriate by the disciplinary authority in the state correctional facility, including, but not limited to, forfeiture of gain-time or the right to earn gain-time in the future under s. 944.28.

(5)  The department may adopt rules and the private vendors operating correctional facilities may adopt policies and procedures for the implementation of this section, the designation of prohibited areas and smoking areas, and for the imposition of the following penalties:

(a)  Inmates who violate this section will be subject to disciplinary action as provided by rule and in accordance with this section.

(b) Employees who violate this section will be subject to disciplinary action as provided by rule.

Fla. Stat. § 944.115(3).

Case No. 5:09cv365/MCR/EMT

regarding tobacco use)[4] (Doc. 42, Ex. A).  Plaintiff stated in his grievance that he had been in the hospital the previous month and diagnosed with "irritated lungs with fluid build up" and a stress-related sleeping disorder; and the violations of the smoking laws were "causing [him] health problems" (*id.*). Plaintiff complained that inmates who smoked and had not requested assignment to the non-smoking quad had been assigned there (*id.*).  He also complained that staff continued to assign newly arriving inmates and "confinement releasees" to the non-smoking quad without questioning them about their tobacco use, and these inmates were smokers (*id.*).  He complained that correctional officers did not make a good faith effort to enforce Fla. Stat. § 944.115 or F.A.C. r. 33-401.401 (*id.*).  He stated that smoking in prohibited areas was a widespread problem, with inmates smoking while correctional officers were present in the dorms (*id.*).  He stated that 60% of the population in the non-smoking quad smoked when and where they pleased (*id.*).  He stated that smokers were threatening and beating non-smokers when non-smokers complained (*id.*).  Plaintiff also complained that inmates and staff (including officers, doctors, captains, lieutenants, sergeants,

---

[4] Rule 33-401.401 provides, in relevant part:

(1)  This rule establishes the tobacco products use policy for the Department of Corrections.  For the purposes of this rule, "tobacco products" means items such as cigars, cigarettes, snuff, loose tobacco, or similar goods made with any part of the tobacco plant, which are prepared or used for smoking, chewing, dipping, sniffing, or other personal use.

(2)(a)  Pursuant to Section 944.115, F.S., use of any tobacco products shall be prohibited in all indoor areas of any building or office within a state correctional facility except for employee housing on department grounds and inmate maximum security (death row) housing areas. . . .

(b)  Pursuant to Section 386.204, F.S., smoking is prohibited in all enclosed indoor workplaces as defined in Section 386.203, F.S.

(3)  Should Department of Corrections' offices be located in buildings not totally in the control of the department, smoking shall be prohibited in all enclosed indoor workplaces occupied or controlled by the department.  Employees may not smoke in areas which do not fully meet the requirements of the Florida Indoor Clean Air Act, Sections 386.201-.209, F.S.

(4)  Outdoor areas owned or leased by the Department of Corrections may be designated by the secretary or the secretary's designee as areas where tobacco products may be used by inmates, staff, or visitors. . . . .

(9)  Violation of this rule shall be grounds for disciplinary action against employees and inmates.

Fla. Admin. Code r. 33-401.401 (2008).

and administrative staff) were smoking in other prohibited areas (including sally ports, hallways, dayrooms, cells in the housing areas, from the property room door to the medical waiting room and pill window, restrooms, the storage room for exercise equipment, and "staging areas"), and no one advised them that this violated the law (*id.*).  He stated this forced him to stand in line and walk through a cloud of smoke in those areas (*id.*).  Plaintiff requested numerous forms of relief, including an order to all correctional officers to enforce the law by suspending privileges of and initiating disciplinary action against those inmates caught smoking in prohibited areas, removal of all smokers from non-smoking quads, posting of no-smoking signs in all areas where smoking was prohibited, and posting of memoranda to inmates warning them of the consequences of smoking in prohibited areas (*id.*).

The next day, Defendant Stewart responded to Plaintiff's grievance, stating that security officers had removed several inmates from the non-smoking quads and taken disciplinary action against many violators ( Doc. 42, Ex. A).  He additionally stated that inmates from confinement were assigned to the non-smoking quad if there were no other available bunks; and newly arriving inmates were assigned to open bunks (*id.*).  He stated the security staff was diligently handling the issue (*id.*).

On September 27, 2008, Plaintiff appealed Defendant Stewart's denial of his September 21 grievance (Doc. 42, Ex. B).  On September 30, 2008, Defendant Stewart responded that the security staff was making every effort to remove smoking inmates from the non-smoking quad; officers were not allowing smoking in the dorms; and they were following the disciplinary procedures set forth in FDOC administrative rules (*id.*).  Stewart stated that inmates were no longer being placed in the no-smoking quad when they were discharged from confinement unless they had previously been housed there and were non-smokers (*id.*).  Stewart acknowledged that smoking was prohibited inside the buildings, but stated smokers would not be denied access to the recreation field, the "pavilion," and the canteen (*id.*).  He also stated that numerous no-smoking signs were posted in the facility; and officers disciplined violators (*id.*) (Plaintiff alleges no-smoking signs were not posted until October 3, 2008, three days after Stewart's response to his grievance (*see* Doc. 24 at 17)).  Stewart stated that staff was advised where smoking was permitted (for example, outside the administration building), and he was not aware that any staff members smoked in prohibited areas, such as in the

hallway next to the property room or under the overhang of the administration building (Doc. 42, Ex. B).

On October 9, 2008, Plaintiff submitted a grievance to Defendant Warden Henry complaining that members of the institutional staff were knowingly violating Florida law and FDOC rules, and the staff and administration were not enforcing the non-smoking laws and policies (Doc. 42, Ex. C). Plaintiff stated that the July 2, 2008, policy (declaring tobacco in the non-smoking quads as contraband and announcing searches) was not being enforced, and inmates assigned to the non-smoking quad were openly buying and bringing tobacco products into the quad (*id.*). He stated he had not observed any searches of inmates returning to non-smoking quads from the recreation yard to ensure that contraband or cigarette lighters were not present (*id.*). Plaintiff complained that officers walked through his non-smoking quad and completely ignored heavy cigarette smoke in the air and cigarette butts scattered through the day room floor (*id.*). He stated inmates continued to smoke as officers walked by them and threw cigarette butts on the floor without any investigation from staff (*id.*). Plaintiff admitted that on October 3, 2008, he observed a member of the institutional staff post no-smoking signs at several locations (including, the walls of the administration building, under the overhang outside the administration building, and from the medical department to the entrance to the "property hallway"), but he complained that no-smoking signs were not posted in all areas where smoking was prohibited by law (*id.*). Plaintiff stated that the same day the additional no-smoking signs were posted, Warden Henry himself observed staff members smoking in a newly designated no-smoking area, but he simply commented that it would take time for the new prohibitions to "catch on" (*id.*). Plaintiff additionally identified several staff members who he observed smoking in prohibited areas even after the new signs were posted. Plaintiff told Warden Henry that the violations of the no-smoking laws and policies were causing him "health problems" (*id.*).

Warden Henry responded that GCF had designated two quads in the A-dormitory as non-smoking quads (meaning, inmates living there would not have the ability to purchase tobacco) (Doc. 42, Ex. C). He stated that security staff was policing the non-smoking quads to "ward off" incidents of inmates smoking there (*id.*). In response to Plaintiff's identifying several institutional staff members who Plaintiff observed smoking in prohibited areas, Warden Henry advised Plaintiff to

notify the correctional officer on duty of the names of violators, "so they can be dealt with accordingly" (*id.*). Warden Henry additionally stated that inmates released from confinement would be placed in non-smoking quads regardless of whether they were smokers if that was where beds were available; and if those smoking inmates wished to be reassigned, every effort was being made to reassign them (*id.*).

On November 20, 2008, Plaintiff appealed Warden Henry's denial of his formal grievance to the Central Office of the Florida Department of Corrections (Doc. 42, Ex. D). Plaintiff again complained that GCF administration was knowingly violating and failing to enforce non-smoking laws and policies (*id.*). The appeal was denied on the ground that the Warden's response appropriately addressed the concerns raised by Plaintiff at the institutional and Central Office levels (*id.*).

II.    LEGAL STANDARDS

A.    Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to

overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, Plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), provides:  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has stated that this "invigorated" exhaustion requirement is the "centerpiece" of the PLRA.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006).  The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007).  It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Woodford, 548 U.S. at 83 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted).

The exhaustion requirement is mandatory, and there is no discretion to waive it.  *See* Woodford, 548 U.S. at 84; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998).  Additionally, the PLRA exhaustion requirement requires <u>proper</u> exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system.  *See* Woodford, 548 U.S. at 93.

The administrative rules of the FDOC include an inmate grievance procedure, the goal of which is "to provide an inmate with a channel for the administrative settlement of a grievance . . . provid[e] additional means for internal resolution of problems and improv[e] lines of communication . . . [and] provide a written record in the event of subsequent judicial ro administrative review."  Fla. Admin. Code r. 33-103.001(1).  The FDOC grievance procedures require an inmate to (1) file an informal grievance to the staff member responsible for the particular area of the problem, *see* Fla. Admin. Code Ann. r. 33-103.005; (2) file a formal grievance with the warden's office, *id.* at r. 33-103.006; and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33-103.007.  However, if an inmate is filing a medical grievance, as was the case here, the initial informal grievance step may be omitted.  *Id.* at r. 33-103.006(3)(e).

A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim.  *See* Parzyck v. Prison Health Services, Inc., 627 F.3d 1215, 1218–19 (11th Cir. 2010) (citing Jones, 549 U.S. at 219; Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.").  Section 1997e(a)'s exhaustion requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . ."  Jones, 549 U.S. at 219 (quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004))).  Additionally, a prisoner need not file new grievances addressing every subsequent act by prison officials that contributed to the continuation of a problem already raised in earlier grievance in order to exhaust his administrative remedies.  *See* Parzyck, 627 F.3d at 1219.  "The [federal exhaustion] statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id.* (quoting Woodford, 548 U.S. at 93 (alteration and quotation marks omitted)).

C.     Eighth Amendment Standard

Plaintiff appears to assert two bases for his Eighth Amendment claim concerning ETS.  First, Defendants were deliberately indifferent to his existing serious medical need; and second, Defendants deliberately exposed him to conditions which posed an unreasonable risk of serious damage to his future health.  With regard to the first aspect of his claim, that is, deliberate indifference to an existing medical need, Plaintiff must satisfy both an objective and subjective inquiry.  See Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  First, Plaintiff must show an objectively serious medical need.  Id.  Second, Plaintiff must show that the prison official "acted with an attitude of 'deliberate indifference' to that serious medical need."  Id.  A medical need is serious when it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotation omitted).  Deliberate indifference may be evidenced by the intentional interference of a prison official with medical treatment once it is prescribed.  See Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

The standard applicable to the second type of claim, that is, deliberately exposing an inmate to conditions which pose an unreasonable risk of serious damage to his future health, also includes an objective and subjective component.  In order to establish this type of Eighth Amendment violation, Plaintiff must show that Defendants have, "with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  Helling v. McKinney, 509 U.S. 25, 31, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).  To show that the risk was objectively unreasonable, a prisoner must establish that he is being exposed to unreasonably high levels of ETS, and that the risk to his health is so grave as to violate contemporary standards of decency.  Id. at 35–36.  To establish deliberate indifference, the prisoner must show:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.  See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).  "The adoption of a smoking policy will bear heavily on the inquiry into deliberate indifference."  Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (quotation and citation omitted).

However, supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory

liability may occur either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See* Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

III.     ANALYSIS

A.     Exhaustion of Administrative Remedies

Defendants contend the summary judgment record conclusively establishes that Plaintiff failed to exhaust his administrative remedies.  Defendant Stewart acknowledges that he responded to the grievance submitted by Plaintiff on September 21, 2008, in which Plaintiff complained about smoking in the quads and the alleged effects on his health (Doc. 42 at 10, Ex. A).  However, Stewart contends the grievance was not addressed to him personally (*id.*).  He further contends the fact that he denied the grievance does not make him liable for the allegedly violative conduct brought to light by the grievance (*id.*).  Stewart contends any allegations against him subsequent to September 21, 2008 are precluded because Plaintiff never exhausted his administrative remedies with regard to conduct that allegedly occurred after that date (*id.* at 11).

Defendants acknowledge that Plaintiff appealed Stewart's denial of his September 21, 2008 grievance to Defendant Warden Henry (Doc. 42 at 11, Ex. C).  Defendant Henry admits he denied the appeal on November 18, 2008, stating that GCF was continuing to police the non-smoking quad, and advising Plaintiff to provide the correctional officer on duty with the names of those breaking the rules so they could be dealt with accordingly (*id.*).  Defendant Warden Henry contends the fact that he denied Plaintiff's grievance appeal does not make him liable for any violative conduct, especially in the absence of any allegation that medical personnel informed him of any of Plaintiff's medical restrictions prior to the date he denied the grievance appeal (*id.* at 12).  Warden Henry further contends Plaintiff's allegation against him up to September 21, 2008, is an isolated incident and is insufficient to establish liability (*id.*).

Defendant Zoley argues Plaintiff failed to exhaust his claim against him because he never identified him or the "core facts" against him in any grievance or appeal (Doc. 42 at 13).

Defendants appear to confuse the question of their liability on the merits of Plaintiff's claim with the separate and distinct question of whether Plaintiff exhausted his administrative remedies.  Although Plaintiff did not direct his informal grievance to Defendant Stewart, the grievance accomplished § 1997e(a)'s purpose by alerting prison officials to the issue that ETS was causing him health problems and giving them the opportunity to resolve it before being sued.  When Stewart denied the grievance, Plaintiff filed a formal grievance with Warden Henry, again complaining that the lack of enforcement of the no-smoking policies were causing him health problems.  Upon Warden Henry's denying the grievance, Plaintiff appealed the decision to the Central Office.  Under

<u>Parzyck</u>, this was sufficient to fulfill the letter and purpose of the exhaustion requirement.  627 F.3d at 1218–19.  Therefore, Defendants' motion to dismiss or for summary judgment, based upon their asserted exhaustion defense, should be denied.

       B.     <u>Failure to State a Claim against Defendant Zoley</u>

Plaintiff alleges Defendant Zoley approved all operational policies at GCF, including:  (1) a policy requiring all inmates to remain in their quads a minimum of twenty-one (21) hours per day, (2) a policy permitting inmates only one (1) hour of recreation per day, and (3) a policy permitting the sale of tobacco at GCF (Doc. 24 at 10–11, 14, 17, 18).  Plaintiff alleges Defendant Zoley also understaffed GCF and failed to adopt a policy providing for "smoke breaks" for inmates (<i>id.</i> at 11).  Plaintiff additionally asserts Zoley implemented a practice of using only one of two air handling units in each quad as a cost saving measure (<i>id.</i> at 11, 14).  According to Plaintiff, this practice resulted in poor ventilation (<i>id.</i> at 11, 14).  Plaintiff claims that Defendant Zoley's policies resulted in deliberate indifference to his present and future health, in violation of the Eighth Amendment (Doc. 24 at 13, 24).

Defendant Zoley contends Plaintiff's allegations fail to state a claim against him because Plaintiff attributes liability to him solely on the basis of his supervisory position as CEO of The GEO Group, Inc., but Plaintiff does not allege facts showing an affirmative causal connection between Zoley's acts or omissions and the alleged constitutional deprivation (Doc. 42 at 13–16).  Defendant Zoley contends Plaintiff does not allege facts showing that any constitutional deprivations were "obvious, flagrant, rampant, and of continued duration," or that the deprivations were so pervasive that knowledge was imputed to him (Zoley) and he refused to take action to remedy the alleged violations (<i>id.</i> at 15).  Additionally, Plaintiff does not allege facts showing that Zoley's policy was the "moving force" or direct link causing the alleged deprivation of Plaintiff's rights (<i>id.</i> at 16).  Moreover, Zoley contends, Plaintiff alleges no facts showing that he directed his subordinates to act unlawfully, or knew they would do so and failed to stop them (<i>id.</i>).

The undersigned agrees that Plaintiff has failed to state a basis for liability as to Defendant Zoley.  Plaintiff admits that on April 11, 2008, prior to his arrival at GCF, the administration announced its policy of designating one "quad" in each housing unit as a "non-smoking quad," meaning that inmates living in the quad would not have the ability to purchase tobacco products

(Doc. 24  at 8, Ex. F; Doc. 47 at 28–30, Murray Aff., Weinberg Aff., Mathews Aff.).  Plaintiff admits that the stated intent of the announcement was to create a "true, smoke-free environment" in each housing unit (Doc. 24 at 8).  Plaintiff also admits that on July 2, 2008, GCF administration posted another memorandum to inmates updating the policies for non-smoking quads (*see* Doc. 24 at 8; Doc. 47 at 28–30, Murray Aff., Weinberg Aff., Mathews Aff.).  The memorandum stated that by July 7, 2008, inmates returning to non-smoking quads from the recreation yard would be searched to ensure that no contraband or cigarette lighters were present (*id.*).  The memorandum further stated that if staff smelled smoke or otherwise determined that smoking was occurring, the officer in charge would be contacted and a fire and safety inspection would be conducted to ensure that no lighted smoking materials were present (*id.*).  Plaintiff admits he was assigned to a non-smoking quad (*see* Doc. 24, Ex. A).  Additionally, the court takes as true Plaintiff's allegations that Defendant Zoley directed subordinates to utilize only one air handler in each quad, implemented policies requiring inmates to be in their quads 21 hours per day, permitted only 1 hour of recreation per day, approved the sale of tobacco products at GCF, failed to adopt a policy permitting "smoke breaks" for inmates, and understaffed GCF.

    None of the policies or customs cited by Plaintiff, considered individually or collectively, were facially unconstitutional or authorized inmates living in non-smoking quads to be exposed to ETS, let alone levels of ETS that posed an unreasonable risk of serious damage to their health.  Furthermore, Plaintiff's allegations fail to show that Zoley implemented the policies with "deliberate indifference" to their known or obvious consequences.  *See* Bd. of Cnty. Comm'r of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404–05, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); McDowell v. Brown, 392 F.3d 1282, 1290–92 (11th Cir. 2004).  At most, the allegations may suggest negligence; however, negligence, either simple or heightened, does not suffice to impose liability under § 1983.  *See* Brown, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice.").

    Additionally, although Plaintiff alleges that violations of the non-smoking policies at GCF were commonplace, and he submitted affidavits of three other inmates stating that as of December of 2008, the correctional staff at GCF continued to smoke in areas designated as non-smoking (specifically, near an overhang at the administration building) and failed to enforce the non-smoking

policies (*see* Doc. 47 at 28–30, Murray Aff., Weinberg Aff., Mathews Aff.), Plaintiff has failed to present evidence from which a reasonable fact finder could conclude that Defendant Zoley was aware of widespread violations of, or failures to enforce, the non-smoking policies. Therefore, Defendant Zoley's motion for summary judgment should be granted based upon Plaintiff's failure to state a claim for relief.

Accordingly it is respectfully **RECOMMENDED**:

1.     That Defendants' motion to dismiss or for summary judgment (Doc. 42) be **GRANTED IN PART** as follows:

a.     The motion be **GRANTED** to the extent Plaintiff's claims against Defendant Zoley should be dismissed for Plaintiff's failure to state a claim against him;

b.     The motion be **DENIED** to the extent Defendants seek dismissal based upon Plaintiff's failure to exhaust administrative remedies.

2.     That Defendant Zoley be **DISMISSED** from this action.

At Pensacola, Florida, this 4<u>th</u> day of May 2011.


<u>/s/ *Elizabeth M. Timothy*                          </u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**




<u>**NOTICE TO THE PARTIES**</u>

     **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**